In re **SOUTHWEST FLORIDA HEART GROUP, P.A., Debtor.**

No. 9:05–BK–17167–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

June 1, 2006.

Jeffrey W. Leasure, Fort Myers, FL, for Debtor.

**ORDER ON THE HEART GROUP P.L. MOTION FOR ORDER DEEMING THE TRANSITION SERVICES AGREEMENT EXPIRED AND DETERMINATION OF ADMINISTRATIVE CLAIM AGAINST THE ESTATE**

ALEXANDER L. PASKAY, Bankruptcy Judge.

(Doc. No. 191)

THE MATTER under consideration is a Motion for Order Deeming the Transition Service Agreement Expired and Determination of Administrative Claim against the Estate, filed by The Heart Group P.L. (The Heart Group) who seeks an allowance of an administrative expense in the total amount of $110,853.04. In due course, the matter was set for a hearing, at which time the Court heard testimony of witnesses and having considered the record, including the documentary evidence offered and admitted into evidence now finds and concludes as follows:

At the time relevant Southwest Florida Heart Group P.A., (the Debtor) was operating several medical facilities specializing in treatment of heart disease. Because of the dissention among the physicians, it became inevitable that the Debtor could not continue to operate under its current structure. The matter was eventually resolved and the decision was that the Debtor was to stop operating all the medical facilities. As a result, the medical facilities which were previously operated by the Debtor would be operated by three different entities established by various doctors, such as The Heart Group P.L. located in Ft. Myers, Florida, the second facility located in Naples, Florida and a third facility located in Bonita Springs, Florida.

The Debtor filed its Petition for Relief under Chapter 11 on August 29, 2005. According to the Schedules filed by the Debtor, the total outstanding accounts receivable earned but yet to be collected was $1,343,239.00. It soon became apparent that it was essential for the Debtor to make arrangements to pursue the collection of these accounts. In light of the fact the Debtor no longer functioned as an entity and no longer had any employees who could devote the time necessary to collect these accounts receivable, the Debtor's estate needed someone to undertake

this task. To solve this problem on August 31, 2005, the Debtor filed a Motion to Approve Transition Services Agreement (Doc. No. 12) entered into by the Debtor and the newly formed entity, The Heart Group. In its Motion, the Debtor requested that this Court approve the Transition Service Agreement between the parties in order for The Heart Group to provide administrative services to the Debtor and to collect these outstanding accounts receivable on behalf of the estate. The Motion was set down for hearing, at which time, after an extended discussion, this Court entered it Order Granting in Part and Denying in Part Debtor's Motion to Approve Transition Service Agreement (Doc. No. 66) on September 22, 2005.

It is clear from the record of the hearing held on the Motion to Approve Transition Service Agreement that this Court repeatedly announced that it is unwilling to approve any fixed percentage rate of the amount collected. In addition, this Court was unwilling to approve any predetermined hourly rate for the parties who were assigned to do the collection and, therefore, the allowance of an administrative expense will be determined considering the total benefit conferred on the estate by the services rendered by the employees of the group who were in charge of this project.

The present Motion before this Court seeks a determination that the Transition Service Agreement between the parties is terminated and expired. In addition, The Heart Group also seeks the allowance as an administrative expense of the amount of $110,853.04 for their collection services provided to the Debtor on its accounts receivable between September 1, 2005 and February 6, 2006, totaling approximately $1,244,850.53. The Heart Group contends that they are entitled to an eight percent (8%) fee for collecting that amount, or the amount of $99,588.04. Nonetheless, this Court notes that in its Order Granting in Part and Denying in Part Debtor's Motion to Approve Transition Service Agreement, this Court ordered that "the Motion is denied as to the payment of an eight percent (8%) collection fee."

In addition, The Heart Group further seeks an allowance of an administrative expense for time spent collecting the Debtor's accounts receivable in the amount of $11,265.00. (The Heart Group's, Exhibit B). In its Motion, The Heart Group contends that the administrative services provided to the Debtor through February 2, 2006, by James Langley (Mr. Langley), who is the administrator of The Heart Group, totaled the amount of $4,800.00. The amount of $4,800.00 is based on Mr. Langley spending 32 hours at the rate of $150.00 per hour. In addition to the time spent by Mr. Langley, The Heart Group further contends that Marcie Moates (Ms. Moates) provided services in the amount of $6,465.00, based on 64.65 hours at the rate of $100.00 per hour. Thus, the total administrative services provided by both Mr. Langley and Ms. Moates totaled the sum of $11,265.00.

■ It was established at the final evidentiary hearing that the bulk of all the accounts receivable collected by The Heart Group in the month of September totaled $935,331.92. It is without dispute that the time lag between submission of the invoices and actual receipt of the payment was at least, if not longer than thirty (30) days. It should be evident from the foregoing that some of these amounts collected were as a result of the collection efforts made prior to the commencement of the Chapter 11 case and prior to the execution of the Transition Service Agreement. Thus, for this reason, it cannot be recognized as a proper administrative expense.

■ This record is clear that after September 2005, the collection efforts of The

Heart Group gradually declined. (The Heart Group's, Exhibit 9). The collections as indicated on the October 3, 2005, spreadsheet were $935,331.92. According to the spreadsheet dated November 1, 2005, the total collection was $181,884.17. The spreadsheet dated November 30, 2005, indicates total collections in the amount of $80,411.97. The spreadsheet dated December 28, 2005, indicates the collections were $31,835.27. The next report dated February 1, 2006, indicates that the total collection was $27,746.96. And the last report dated March 1, 2006, indicates total collections in the amount of $825.50.

Based on the foregoing, even if this Court is willing to assume that the bulk of collections which occurred in September were the result of the services rendered by the employees of The Heart Group, the total benefit to the estate could not be based on the amount of the total collections reported even after the execution of the Transition Service Agreement. Considering the totality of this picture, this Court is satisfied that it is fair to conclude that the total collection attributable to the services of the employees of The Heart Group was possibly in the range of $309,518.61 and $252,408.96.

This Court is satisfied that based upon the totality of the evidence, the appropriate amount of the collections as a result of the services rendered by the employees of The Heart Group is $309,518.61. The Heart Group seeks an allowance of an eight percent (8%) collection fee. This Court is satisfied that it is appropriate to allow a ten percent (10%) award for their collection efforts, and therefore, The Heart Group is entitled to an allowance of an administrative claim in the amount of $30,951.86.

In addition, The Heart Group also seeks reimbursement for the time Mr. Langley and Ms. Moates spent collecting the accounts receivable of the Debtor. Mr. Langley is currently in charge of operating the medical facility, which is now operating on the same premises by the newly formed entity, The Heart Group. As indicated above, Mr. Langley spent 32 hours for collecting the Debtor's accounts receivable and The Heart Group seeks reimbursement at the hourly rate of $150.00 per hour, totaling $4,800.00 for Mr. Langley and for Ms. Moates, who is an employee of The Heart Group, the total of 64.65 hours at the compensable rate of $100 per hour. Considering that both Mr. Langley and Ms. Moates were full-time employees of The Heart Group and that they have received their regular salary working for that entity, this compensation is in addition to their salary and based upon their annual salary, this Court is satisfied that the hourly rate charged is grossly excessive and shall not be more than $84.00 per hour for Mr. Langley and $30.00 an hour for Ms. Moates. Based on the foregoing, this Court is satisfied that the allowance for Mr. Langley's services provided to the Debtor shall not exceed more than $2,688.00; and for the services provided by Ms. Moates shall not be more than $1,939.50.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Transition Service Agreement be, and the same is hereby terminated and expired. It is further

ORDERED, ADJUDGED AND DECREED that The Heart Group P.L. is entitled to an allowance of an administrative claim in the amount of $30,951.86 for their collection efforts and the amount of $4,627.50 administrative services provided by Mr. Langley and Ms. Moates, or the total allowance of $35,579.36.